Judge Hawkins Judge Hawkins, I'm right here. Can you hear me? Yes. Okay. The next case on today's calendar Is Edwards versus Marin Park Mr. Demartini Let's see who's going first. Mr. Edwards. Yes. No, no, no. Mr. Moore. This case, by the way, this case was allotted 20 minutes per sign. The issues seem pretty discreet. We may not need all that time. I didn't anticipate using it all anyway. Okay. Thank you. Thank you, Your Honors. We appreciate your time in reviewing this case. I perceive there are four specific issues here, the most important of which is the Fair Housing Act claim. With regard to the Fair Housing Act claim, we have three distinct points to make. First, under Rule 8A, the General Notice Pleading Statute, conclusory allegations such as the kind that were in this complaint are acceptable under the holding in Zorkiewicz. Aside from that, even if this Court concludes that the sufficiency of the allegations in the Fair Housing Act claim in this case were insufficient, under the longstanding holding in the Lopez case from this Court, liberal leave should have been given to the pro se plaintiff and essentially to allow her newly retained lawyers to amend the complaint. The real specific issue on the Fair Housing Claim Act is whether or not the District Court properly concluded that any amendment would have been futile. And that's where I think the Court needs to focus its attention. The Court reached a conclusion. He gave leave to amend, didn't she, when she dismissed it? No, she only gave leave to amend on the RICO cause of action. And the state constitutional claim as well. That's true, which I don't believe we even pursued on appeal, Your Honor. The specific issue on fair housing, however, was the Court reached a conclusion on its own after reviewing both parties' papers that the predicate act by Ms. Edwards' complaint was that women were being discriminated against because of the dangerous condition of roads. That is not what Ms. Edwards was attempting to get out in her complaint, however, in our field. What she tried to express was that she had met with other women and discussed with them a disparate impact upon them of being targeted for violations, code violation after code violation, while other tenants who were men were not presented with code violations. That's what she attempted to allege. And that was the only basis for the Court's ruling that no leave could be granted on the Fair Housing Act claim. We believe that that was a misconstruction of plaintiff's complaint. We believe that this Court, de novo, can look at the complaint and conclude on its own whether or not any possible amendment would have been futile. And we don't believe that an amendment would have been futile. We think that our papers lay out that there were specific facts of a disparate impact on women and that an amendment should have been allowed. Moving to the intentional infliction of emotion distress claim, the Court in its gatekeeper role elected to make the conclusion that under no circumstances could the conduct that was alleged in the complaint ever reach the level of outrageous conduct. And we think that the Court abused its discretion and overstepped its bounds in that regard. Actually, I think I misspoke. I think this Court reviews that gatekeeper decision on a de novo basis. Essentially, what the Court concluded was you could never, under these circumstances, consider these facts to be outrageous. I think, Justice Pius, as you recently concluded, even the giving of flowers in certain circumstances could amount to extreme cruelty. What the plaintiff alleged in this case was there was a repeated pattern of false notifications that the defendants knew were false when they sent them, that they were designed to impair her property rights and get her out of her property, and that even after she notified them that it was causing her emotional distress and physical injury, they continued that repeated pattern of conduct. I don't believe you can say that under no circumstances could that ever be considered outrageous. Moving on to the continuing nuisance claims, the Court reached the conclusion that the plaintiff had brought her continuing nuisance claim under the mobile home residency laws. The plaintiff did not make such an election. The Court held her to a pleading standard for the mobile home residency laws requiring 30 days' notice. That should not have been required. And even if the Court ---- Do you have a choice about that? If there's a statute that applies specifically, can she still bring a common law clause of action? She has the right to bring a common law claim, Your Honor. There's a case right on point which indicates that the mobile home residency laws were intended to supplement, not supplant, the continuing nuisance common law. We cited two cases, Rich v. Schwab and Palos Verdes Shores Mobile Home Estates v. Los Angeles, citing Robinson v. City of Yucaipa, all of the sites of which are in our briefs. She had an option, and she chose the option of continuing nuisance under the common law. The Court construed it as a mobile home residency claim, and even if the Court was proper in doing so, she did in fact give a 30-day notice. As counsel, when I came into the case, we only discovered that the 30-day notice that she had written ---- In fact, her 30-day notice said just notice of I'm going to bring a lawsuit for continuing nuisance. It didn't say anything about Mobile Home Residency Act, but it was a 30-day notice. She gave that notice to him. We discovered it only after all the briefs had been filed. Because the District Court did not allow oral argument on the matter, we weren't able to present that at that time. It was presented to the Court and is a part of this record when we opposed the motion for attorney's fees, which was also brought up on appeal. I don't think there's much more to say about that. And the last issue is with regard to 41B and the dismissal of the RICO cause of action and the state law causes of action with prejudice. I certainly never intended to willfully disobey the Court order when we sent the notice to the Court that we were standing on our ---- Very strange piece of law. I don't understand it at all. I mean, basically what happened was the claim was dismissed and she chose to stand on her original pleadings. Why didn't she have a right to do that? Well, Your Honor, perhaps it was my mistake in filing that document. I'm actually saying I think the law is strange. I don't understand why she shouldn't ---- why there's any ---- if there's not an order, I don't understand there to be an order to amend. There's essentially an order to amend if you want to amend. If you don't want to amend, then you stand on your pleading. That's what I was under ---- what I didn't want to have happen was have the district court think that we simply disregarded the deadline. In reality, we had at most four days. I can't specifically remember when I got the Court's order, but it was issued on a Friday, mailed on a Friday, or entered in the docket, I should say, on August 26th, July 26th, which is a Friday. The earliest I would have seen it would have been Monday morning. It would have left me four days to review 1,200 pages or more of documents that, in a case I had just recently gotten into, to be able to comply with that order. And I don't believe that compliance with that order was truly really possible. I believe it was an illusory option. I think the court on appeal can so find and allow us to amend the RICO claim when the case ---- if and when the case is remanded. The other alternative is that the court on the district court could have simply dismissed it with prejudice, which would have meant that on appeal you would be reviewing the RICO cause of action, de novo, as opposed to under an abuse of discretion standard, which is why we believe that the 41B rule of application in this case was a much more drastic option than even the court needed if it felt that we had been disobedient. That's what I don't understand. So you're now telling us that you're not willing to stand on your complaint with regard to the RICO claim. No, I'm not saying that, Your Honor. I'm saying that under the circumstances I was left with an option of either trying to amend or not. You never asked for more time to amend. We didn't because we honestly didn't even know that we would have ---- we didn't know what the outcome of that request would be, and we didn't want to potentially waive rights of appeal as to the FHA claim. So essentially you do want us to review this sanction notion rather than simply saying they decided to stand on their plea because you're viewing it as a sanction as well. Is that right? I think the problem I'm faced with is that as the order was issued, your review of the RICO claim and the dismissal of the RICO claim is on an abuse of discretion standard. However, if the court had simply dismissed RICO with prejudice, you'd be reviewing the sufficiency of the RICO allegations de novo. Given an option, I'd prefer that you review the RICO allegations de novo, and I'll take my shot that we've pleaded adequately even though it was a pro se complaint. Well, I guess what you could say is all we're reviewing is whether or not she correctly dismissed the case under 41B. Versus with prejudice. That's correct. Right. And if we decide that she incorrectly, that the district court incorrectly dismissed it, then it's a remand and you're back sort of where things were. Hopefully. And she should give you leave to amend. That would be our hope. She would just give you leave. Then your right to amend under her prior order would kick in and you would file an amended complaint. That would be the hope, Your Honor. And I think I'm done at that point. Okay. Thank you. Good morning, Your Honor. I'm Vincent DiMartini for the Mobile Home Park. Could you keep your voice up, Mr. DiMartini, because we have Judge Hawkins on the phone. Please. Excuse me. Thank you. Actually, in response to what was briefed and what was commented this morning, I really don't have a lot of significance to add. I think I've addressed the issues that were raised in the briefs that were submitted. With respect to, I would comment on the nuisance issue that was presented here. I believe that the requirement with respect to the nuisance claim would be that in an action for individual nuisance, that one must show and plead a harm that is individual, unique, or separate from what is alleged to be, if you will, the general harm that might exist out to the public as a result of a nuisance. Again, I think none of these issues were in the pleadings themselves. The Court clearly states in many, many different fashions that the pleadings herein were, if you will, confusing. This was a pro se complaint, correct? That is correct, Your Honor. This is indeed a pro per. Very artfully done. Not like we would expect a talented lawyer to do. I understand that the party that filed this was in pro per at the time or in pro se. But I would point out. We give a lot of deference. I do understand that as well. I would point out. Is the FHA claim adequately pled given the level of generality at which such discrimination claims can be pled? Well, I think, again, as the Court pointed out, that there's no specificity in the pleadings themselves. My understanding is that if you file a Title VII complaint that says I'm an employee, I was qualified, I was discharged because of my race, I have a Title VII complaint, that's a complaint. Well, Your Honor, again, I think that while it may be that you have to set even those allegations out, I don't believe that in this instance that even that was effectively set out. The Court talks in terms of the documents being confusing and simply conclusory, vague, et cetera. With regard to the pro se. It doesn't matter. And she does say, in Paragraph 7 she says that they retaliated against her for engaging in protected acts under the Fair Housing Act, which included speaking out and associating with others, including a disproportionate number of women seemingly targeted by defendants Park and defendants Stowe who met together to speak about having noticed a disproportionate figure. Why isn't that an adequate complaint that she was discriminated against for raising the question of whether women were being disproportionately targeted? Well, again, Your Honor, all I can state is that I believe that the requirement would be that there would need to be at least some degree of specificity, not just such absolute generality. There is no reference in the pleadings whatsoever as to any detail or specifics as to what she contends were the injuries, what she contends were the acts that violated these rights. It is just simply vague and conclusory and nothing more. You've been given leave to amend as a pro se plaintiff? At that point her counsel was involved. Well, and I should point out also with respect to the pro se aspect of this, just so that the court is aware, this matter went first through a state court action where Ms. Edwards represented herself and Ms. Edwards is a, as she advises us constantly, is a paralegal in federal court matters and so she's not absolutely unfamiliar with it. Again, I'm not suggesting that that should mean that she should plead in the same fashion that counsel would be. Was it unusual to give somebody four days to amend a complaint after counsel comes in? Well, Your Honor, the fact that counsel came in at the point in time that he did come in was... So is it unusual to give somebody four days to amend a complaint? Well, I don't believe it was just a four-day period, Your Honor. There was four days at the time that counsel was engaged, but the court gave a date certain as to the response date and nothing occurred. When it was Ms. Edwards, indeed, who made the option or who opted to bring counsel in at the point in time in which she did, she could obviously have brought him in at any time. She felt it was necessary, appropriate, or helpful, and it shouldn't be defendants that are, if you will, punished by the fact that Ms. Edwards failed to bring in counsel at a time that it might have been more effective or more efficient in the handling of this action. Okay. Anything else? I have nothing other, Your Honor. Thank you, counsel. Thank you. If I may briefly reply, Your Honor. Sure. With regard to nuisance, the lower court never made any substantive conclusions of any kind with regard to the sufficiency of the nuisance pleading. All it said was plaintiff has not given 30 days' notice as required under MLRA. Since she hasn't pled that she's given 30 days' notice, amendment would be futile as to nuisance. With regard to the questions the court asked about the sufficiency of the pleading as it stands, so that even if the court believes that this court could conclude that the pleading was sufficient as it is without remanding for a request that it be amended. In that regard, I want to point out that, as the court noted, Ms. Edwards specifically advised the defendants of specific incidents of women being targeted for violations when other violations existed by other male tenants that were ignored. And I would point to page 42 of the excerpt of record, which is the beginning of a letter that was written on July 18, 2001, to the legislature, to several members of the legislature, including the governor's office, including the housing office, Housing and Community Development Center. And on page 43, she specifically references the instance in which a tenant, Ms. Kelton, was targeted for an awning which extended three inches over her landline. Can you tell me where in your opening brief you raised an issue about the nuisance complaint, nuisance charge? I believe in our opening brief, Your Honor, we discussed nuisance. Are you referring to our opening brief on appeal? Yes. I'm having trouble finding it. I see there's a discussion of the FHA. There's a discussion of the intentional infliction. I don't think it's there. Well, I know that it was discussed in the opposing counsel's brief, and I know we discussed it. Well, you have to raise the issue on appeal. I understand, Your Honor. I thought the only thing you raised was the FHA claim and the 41B dismissal. I may be mistaken about that, but I thought that's ‑‑ Well, there is a paragraph on the intentional infliction, but that's it. I was feeling sort of confused about why this discussion was going on in an issue that I didn't think was in the case. I know that it was briefed at length. I don't know if it was briefed in the opening appeal, Your Honor. I don't see it here in my quick review of it. I know that in the opposing counsel's appeal on the attorney's fees, we discussed at length the nuisance claim. Well, that's his appeal on attorneys, on the denial of attorney's fees. I understand. Would it be appropriate to, if I can find information that would answer the court's question to provide that later? In the brief? I don't know that it's in the brief, but it may have been in our notice of appeal, Your Honor. We have a rule that says if you don't resonate in your opening brief, you've got a problem. Okay. Anything else, counsel? With regard to FHA, Your Honors, the Kelton incident was specifically laid out in letters to the defendants that were a part of the complaint, that were attached exhibits to the complaint, which should have been incorporated by reference. Throughout the complaint, there were repeated statements in the complaint that women were being targeted for code violations where their male counterparts weren't. In particular, in addition, Planoff even alleged in her complaint that in her whole row of mobile homes, she was the only one singled out for refusal to renew the long-term lease. Within 72 hours of the date, four days within, I believe it was four days after she had written to the legislature. So there is sufficient general allegations of a predicate act. And that was the only basis for the district court's ruling. There was no way that a predicate act could be pled here. I thought the problem, a lot of the problem was that there wasn't an adequate fraud allegation. I'm sorry? That there wasn't an adequate under rule nine that the fraud allegations weren't adequate? As to RICO. As to RICO. That's right. As to RICO, again, if the court would like me to discuss the substance of the RICO claim, we can. I don't know. Well, the district court gave you leave to amend, correct? The court gave us leave to amend again, but the question the court asks is four days enough time. And frankly, the problem, which was the last point I wanted to bring out, the problem here was the court did give a date certain. The court said in its order of July 26th you have until August 2nd. And then it didn't, the notice didn't get to us until at the earliest the 29th. If the court had said you have 10 days or 20 days leave to amend, that time potentially would have even been expanded by the three-day rule for mailing. But we didn't have that here. We literally got the notice within a day or two, four days at most, of when we had to file the amendment. And the thing that was particularly of note is that in the court's ruling, Order No. 47 at footnote 4, it specifically warned me, be advised that if you bring a reclaim, if you reamend and include RICO, I'm going to consider Rule 11 sanctions if you can't back up what you say. I had very little time with any clear confidence that I could amend that complaint and not be a file of the court's order without time to review the file. Okay. Thank you, counsel. Thank you. Counsel, the matter will be submitted. Thank you, Your Honor.
judges: Hawkins, Paez, Berzon